IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MELVINA DILLARD WASHINGTON, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action No. 1:25-cv-14634-KMW-SAK |
| CENLAR FSB, | |
| Defendant. | **MEMORANDUM OPINION** |

**Melvina Dillard Washington**

*Pro se*

**James DiMaggio, Esq.**
Stradley Ronon Stevens & Young LLP
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08034

*Counsel for Defendant Cenlar FSB*

**WILLIAMS, District Judge:**

### I.    INTRODUCTION

Plaintiff Melvina Dillard Washington ("Plaintiff"), proceeding *pro se*, brings this action against loan servicer Cenlar FSB ("Cenlar"), challenging the amount reportedly due on her modified mortgage loan. Presently before the Court is Cenlar's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted in part and denied in part.

### II.    BACKGROUND

Plaintiff owns a home in Woodlynne, New Jersey. She alleges that she purchased the home in 2008 with a $127,991 mortgage loan secured by the property. After experiencing financial difficulty, Plaintiff applied for and received a loan modification from Cenlar in 2014. This dispute concerns the amount Cenlar claims remains due on the mortgage.

As of March 2025, Plaintiff's mortgage account reflected a balance of $163,813.60, although the Complaint elsewhere alleges that Cenlar reported more than $180,000 outstanding. Plaintiff disputes those figures as implausible. She maintains that years of payments on a $127,991 mortgage should have substantially reduced the balance, not left her owing more than she originally borrowed. By her own calculation, which she does not disclose, the outstanding balance should be less than $63,000.

Plaintiff attributes the discrepancy to certain unspecified "fees" that Cenlar allegedly assessed against her account over a nine-year period. She does not describe what the fees were purportedly for, when they were assessed, or the amount of any particular charge. Nor does she explain how the fees were inconsistent with the terms of the original mortgage loan or the modification agreement, neither of which is attached to the Complaint. Instead, she alleges that she repeatedly contacted Cenlar seeking an explanation, but that Cenlar's responses were either unsatisfactory or "false and untrue."

Although the Complaint is not entirely clear, Plaintiff appears to link these disputed fees to a hostile March 2014 telephone call with a Cenlar representative. During that call, Plaintiff alleges that the representative was "very nasty," told her that her house was in foreclosure, and stated that she had until the close of business to "[d]ecide what [she] was going to do to keep it." Based on information Plaintiff later allegedly received from a former Cenlar employee, she maintains that the representative "didn't like the fact that [Plaintiff] challenged her" during the call and, in retaliation, intentionally flagged Plaintiff's account in a way that would cause her to lose access to federal housing assistance. Plaintiff concludes, without further explanation, that the representative's alleged fraud "caused Cenlar to inflate over $75,000 in fees."

2

Beyond the disputed fees and account balance, Plaintiff also challenges Cenlar's credit reporting. She alleges that, even after her loan was modified in 2014, Cenlar "continued to make reports to the credit bureau that [she] was in foreclosure." The Complaint does not identify any credit bureau to which the information was furnished, when the reports were made, what specific information was reported, or why the loan modification made the reported foreclosure status inaccurate. Nor does it allege that Plaintiff disputed the reporting with a credit bureau.

Based on the foregoing, Plaintiff initiated the instant action in New Jersey state court. Liberally construed, the Complaint asserts federal claims under the Real Estate Settlement Procedures Act ("RESPA") and the Fair Credit Reporting Act ("FCRA"), as well as state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. Cenlar removed the action to this Court based on federal-question jurisdiction and now moves to dismiss the Complaint for failure to state a claim.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do,'" and a complaint will not suffice if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.    DISCUSSION

The Complaint's central premise is simple: Plaintiff believes she owes less than $63,000 on her modified mortgage loan, yet Cenlar says she owes far more. But a pleading must do more than express disbelief in a loan servicer's math. It must supply facts that make the alleged wrongdoing and the asserted right to relief plausible.[1] The Complaint does not do so here.

### A.  RESPA

RESPA is principally "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). The statute also imposes certain post-closing duties on servicers of federally related mortgage loans. *See* 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.1–1024.41. Here, the Complaint asserts a RESPA

---

[1] To the extent the Motion seeks dismissal on statute of limitations grounds, that request is denied. The Complaint does not clearly identify the factual bases for her claims, what specific conduct Defendant allegedly engaged in, when that conduct occurred, or whether Plaintiff challenges discrete past events, continuing acts, or both. The Court therefore cannot determine on the face of the Complaint when Plaintiff's claims accrued, much less conclude they are untimely. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[I]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).").

violation, but it does not specify which provision of the statute Cenlar allegedly violated. That omission matters because RESPA is not a general vehicle for challenging a mortgage balance. Given Plaintiff's allegation that she wrote to Cenlar seeking explanations for disputed account charges, the only conceivably relevant provision is § 2605(e).

Section 2605(e) requires a loan servicer to respond to a borrower's "qualified written request" ("QWR") within a specified period. A QWR is a written correspondence that "identifies the name and account of the borrower," and either states that "the account is in error" or "provides sufficient detail to the servicer regarding other information sought." *Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 464 (3d Cir. 2019) (citing 12 U.S.C. § 2605(e)(1)(B)).[2] Within thirty days of receiving a QWR, the servicer must generally respond by either correcting the borrower's account and providing written notice of the correction; explaining, after investigation, why it believes the account is correct; or providing the requested information after investigation (or otherwise explaining why that information is unavailable or cannot be obtained). *See* 12 U.S.C. § 2605(e)(2)(A)–(C). To state a claim under § 2605(e), a plaintiff must plausibly allege: "(1) the submission of a QWR, (2) a failure by the servicer to respond in the manner RESPA requires, and (3) damages." *Baker v. Cent. Loan Admin. & Reporting FSB*, No. 25-cv-1696, 2025 WL 2650576, at *2 (D.N.J. Sept. 16, 2025).

Here, Plaintiff has not pled a plausible violation. The Complaint alleges that she "sent so many emails and letters to Cenlar" over the years regarding disputed fees. But she does not identify any particular written request, allege when it was sent, describe its contents, or identify any specific charge that the alleged correspondence concerned. Even assuming one or more of Plaintiff's

---

[2] Moreover, the request must pertain to "servicing"—that is, concern "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments." *Cole*, 790 F. App'x at 464.

alleged communications constituted a QWR, the Complaint does not plausibly allege that Cenlar failed to respond in a manner RESPA requires. To the contrary, Plaintiff alleges that Cenlar provided explanations for the disputed fees, but she maintains that the fees are "fraudulent." Those allegations more naturally suggest a dispute over the validity or calculation of the fees, not a failure to comply with § 2605(e)'s response requirements.

Liability under § 2605(e) depends on whether a loan servicer provided the kind of response the statute requires. The servicer complies with § 2605(e)(2)(B) by providing "a statement of the reasons for which the servicer *believes* the account of the borrower is correct *as determined by the servicer.*" 12 U.S.C. § 2605(e)(2)(B)(i) (emphasis added). Thus, "it is irrelevant whether [a] servicer's understanding of [a] loan modification agreement is correct, so long as it is reasonable." *Heyman v. Citimortgage, Inc.*, No. 14-cv-1680, 2019 WL 2642655, at *36 (D.N.J. June 27, 2019) (quoting *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 509 (E.D. Pa. 2010)). Without more, a dispute over whether fees were properly assessed sounds in contract or some other state-law theory. It does not, by itself, state a RESPA claim. *See id.*

The Complaint also fails to adequately plead damages. Plaintiff does not allege that she suffered any actual damages stemming from a specific failure to respond to a QWR. *See Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 592–93 (D.N.J. 2016) (finding allegations of "inflated monthly billing" insufficient unless plaintiff actually paid fees); *see also Crist v. Cenlar FSB*, No. 23-cv-3448, 2024 WL 3029021, at *4 (D.N.J. June 17, 2024) (finding that generalized allegations of "mental anguish" insufficient to infer actual damages resulting from a specific failure to respond to a QWR). Nor does she allege any "pattern or practice of noncompliance" that can support an entitlement to statutory damages under 12 U.S.C. § 2605(f).

6

In her Opposition to the instant Motion, Plaintiff attempts to stave off dismissal by introducing new facts and exhibits that were neither referenced in nor attached to her Complaint. That is not a proper method of amendment. *See Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 130 (D.N.J. 2017) ("[A] [p]laintiff cannot amend or supplement his pleadings through his opposition brief."). However, because Plaintiff proceeds *pro se*, the Court construes the Opposition as a cross-motion for leave to amend and considers whether the additional allegations and materials would cure the defects in her RESPA claim.

The Court concludes that they do not. Plaintiff's Opposition merely reiterates the same vague and conclusory assertion that she submitted QWRs in the past, but that Cenlar failed to correct the purported "errors" or explain the allegedly fraudulent "fees." The only proposed allegations containing any meaningful detail concern a telephone call with a Cenlar representative regarding what Plaintiff describes as an unexplained recurring monthly fee in the amount of $1,470.61.[3] But whatever Plaintiff thinks of the representative's explanation, that telephone call was not a QWR. *See* 12 U.S.C. § 2605(e)(1)(B). Thus, even accepting Plaintiff's proposed allegations as true, she still offers no factual content from which the Court could infer a plausible RESPA violation. Because her proposed allegations and exhibits would not cure the defects discussed above, that Court grants Cenlar's Motion and dismisses the RESPA claim with prejudice.

---

[3] According to Plaintiff, the representative explained that the $1,470.61 figure reflected assessed fees that did not need to be paid immediately. Plaintiff maintains that this explanation was inadequate, at least in part, because the representative could not understand or explain why she was being charged an additional $1,470.61 every month on top of her regular monthly payment. But the billing statements attached to Plaintiff's Opposition seem to undermine that premise. In particular, two 2024 billing statements appear to show that this $1,470.61 figure, categorized as "Other Fees," was not a newly recurring monthly charge, but rather a running balance of all unpaid fees and penalties assessed against her account. And although the statements do not provide an itemized accounting of that specific balance, the September 2024 statement reflects the addition of a $20 bad-check fee following a returned payment from the prior month.

## B. **FCRA**

The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quotation marks omitted). The Complaint does not identify any credit bureau, the date of any alleged report, the specific information reported, or why that information was inaccurate. But Cenlar is alleged to be a furnisher of credit information, and the FCRA sharply limits private claims against furnishers. To the extent Plaintiff seeks to hold Cenlar liable merely for furnishing inaccurate information, that theory is not privately enforceable under § 1681s-2(a). A private claim may proceed, if at all, under § 1681s-2(b), which is triggered only after the consumer disputes the information with a consumer reporting agency and the agency notifies the furnisher. *See* 15 U.S.C. § 1681s-2(b)(1)(B). To state a claim under § 1681s-2(b)(1)(B), a plaintiff must allege that "(1) [she] sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Voranau v. LoanCare*, No. 19-cv-16825, 2020 WL 13572962, at *3 (D.N.J. Apr. 13, 2020) (quoting *Henderson v. Equable Ascent Fin., LLC*, No. 11-cv-3576, 2011 WL 5429631, at *3 (D.N.J. Nov. 4, 2011)).

Here, Plaintiff has pled none of these elements. The Complaint alleges only that Cenlar "continued to make reports to the credit bureau that [she] was in foreclosure" following her loan modification. The Complaint does not identify any credit bureau, the date of any report, the specific information reported, or why that information was inaccurate. More importantly, it does not allege that Plaintiff disputed the information with a consumer reporting agency, that the agency notified

Cenlar, or that Cenlar failed to reasonably investigate after receiving such notice. Plaintiff's Opposition offers no new allegations relevant to an FCRA claim and, indeed, makes no further mention of her credit at all. Because Plaintiff's proposed allegations would neither address nor cure these defects, the Court grants Cenlar's Motion and dismisses the FCRA claim with prejudice.

### C. Remaining Claims

Under 28 U.S.C. § 1367(c)(3), district courts "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). No such affirmative justification exists here. The Court understands Plaintiff's central grievance to be that Cenlar's accounting must be wrong because the outstanding balance exceeds the amount she believes she should owe. Such a dispute will principally turn on the terms of the mortgage loan, the 2014 modification agreement, the payment history of the account, and the nature of the disputed fees—matters that sound in state law, not federal law. Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims and remands this action to state court.

### V.    CONCLUSION

For all of the reasons set forth above, Cenlar's Motion to Dismiss is granted as to Plaintiff's federal claims under RESPA and the FCRA. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, the Motion is denied without prejudice as to those claims. This action is remanded to the Superior Court of New Jersey, Law Division, Camden County.

Date: April 30, 2026

_____
KAREN M. WILLIAMS, U.S.D.J.